WALLACE, JUDGE:
This claim was filed against the respondent by Matta L. Brady as the administratrix of the estate of Shell C. Brady, deceased, for damages resulting from the death of the deceased.
Shell C. Brady owned a 1977 International tandem-type truck with which he operated his own business hauling gravel and other materials. On July 25, 1979, he was hauling gravel from the James River Hydrate Company in Swords Creek, Virginia,'' to respondent’s garage in Williamson, West Virginia. Linus Holt, a truck driver for C&R Trucking Company, was also delivering gravel between those points on the same day, using the same routes. Both trucks proceeded to Williamson over Mary Taylor Mountain on West Virginia Secondary Route 9 at approximately 10:30 a.m. It was a cloudy day, and there was dry dirt on the surface of the mountain highway. Mr. Holt made no complaint about the dirt when he arrived at the garage. Both trucks, after unloading the gravel, were returning to Virginia and had stopped for lunch at about 12:30 p.m. at a small restaurant in Taylorsville, West Virginia, situated at- the foot of Mary Taylor Mountain. After lunch, they left the restaurant and proceeded up the mountain on West Virginia Secondary Route 9. The decedent was in the lead about 200 feet in front of Mr. Holt, who followed in his truck. It was raining very hard. The mountain road was steep and had many curves. There were no guardrails. Mr. Holt testified that both trucks were proceeding at a speed of 20-25 miles per *34 hour, and, as the decedent’s truck “topped over the mountain,” it slid sideways down the highway and went over the side of the mountain, front end first. The road was covered with mud one quarter to one-half inch thick for about 200 feet. Mr. Holt’s truck slid down the road, but he was able to stop and move his truck off the highway. An automobile was forced back down the mountain to prevent a collision with the Holt truck. Mr. Holt called for assistance on his CB radio, got out of his truck, slipped and fell on the muddy road, then managed to go down the mountain side with another motorist to the point where the truck had come to rest. The decedent was pinned under the truck. Trooper Barry M. Henry and Trooper D. A. Hamlin, of the West Virginia State Police, reached the scene of the accident from Williamson 30 minutes after being notified. An ambulance arrived 30 minutes later. The police, ambulance crew, and others took the injured man by stretcher farther down the mountain to where the highway curved around the mountain below the accident scene. Mr. Brady died en route to the hospital.
Mr. Holt, Trooper Henry, Cecil Diamond, and Deputy Wallace Baisden, witnesses for the claimant, testified that the road was covered with mud for about 150 to 200 feet, and all but Trooper Henry testified that there were no warning signs or watchmen posted to warn of the dangerous condition.
Wallace Baisden, Chief Field Deputy Sheriff of Mingo County, was notified of the accident while in his office in Williamson. He met the ambulance coming off the mountain, and proceeded up the mountain to clear traffic. Deputy Baisden testified, “I couldn’t get my cruiser up the left side of the traffic. . .so I got it as far as I could and then I had to walk, but I got up to the scene where the truck went over and the mud was so slick that I couldn’t stand on it.” He further testified that he returned to his cruiser and radioed his office to notify the respondent to send trucks with gravel. The driver of a truck filled with gravel that was on the mountain agreed that his load could be spread on the highway. The deputy and others spread the gravel on the road. Respondent’s truck arrived later with gravel or flyash.
*35 Jake T. Watts, Jr., testified that he was respondent’s grader operator on the mountain on the day of the accident. He stated that the work crew consisted of his boss, H. P. Maynard, two flagmen, and himself as the grader operator. He stated that his job was to remove slate and clay which slid off the mountain and filled the ditch line and covered the berm. With the grader, he pulled the dirt from the ditch line and berm and pushed it across the road and down the mountain. He further stated that there was too much material to move with the grader and he had complained to his boss that the equipment was insufficient. He started to work at about 8:15 a.m. The dirt and clay piled up on the surface of the road. It began to rain, and the material became slick. He removed as much of the material as he could. The crew was then moved to another site near Red Jacket, West Virginia, where they finished out the day. When the crew left, the warning signs were removed and the flagmen went with the crew. Apparently, no provisions were made for additional signs or flagmen.
James E. Webb, respondent’s assistant county supervisor at the time of the accident, testified that it was the practice to remove all of the materials from the hillside of the road to the other side to build up the berm. This was the procedure at the scene of the accident.
The record establishes that the respondent was negligent, and its negligence was the proximate cause of the decedent’s death. A written stipulation filed with the Court stipulated that, as a result of the death of Shell C. Brady, the following expenses were incurred: burial marker, $702.00; flowers, $78.00; hospital charges, $148.00; and funeral bill, $2,319.94. Also stipulated and entered into evidence were life expectancy tables, wages and tax statements from previous employers, and income tax returns for 1976, 1977, and 1978. A Pecuniary Loss Report prepared by Dr. Richard Raymond, Ph.D. of Economics, showing net income loss to claimant’s estate in the amount of $188,361.00, was received in the stipulation. The deceased, Mr. Brady, was 38 years old at the time of his death. He had a life expectancy of 34.8 years and a work-life expectancy of 24.8 years. He had no children and was survived by *36 a wife, Matta Brady, age 39. Mrs. Brady suffers from rheumatoid arthritis and is unable to work. She receives no social security or monthly income and must support herself from savings. West Virginia Code §55-7-6 provides that, in an action from wrongful death, a jury may award such damages as it may deem fair and just, and determine what portions shall be distributed to the surviving spouse and children. In this case, there were no children.
The written stipulation filed also indicated that the 1977 model International truck, which was destroyed in the accident, had a fair market value at the time of loss of $35,380.00. The claimant received $33,650.00 from Selected Risks Insurance Company for this loss, with a provision for a deductible of $100.00.
The Court, having considered the relevant facts, the stipulation of the parties, and the opinion of Dr. Richard Raymond in his Pecuniary Loss Report, concludes that damages should be awarded to Matta L. Brady, Administratrix of the Estate of Shell C. Brady, deceased, in the amount of $203,347.94, and to Selected Risks Insurance Company, as subrogee of Shell C. Brady, in the amount of $33,650.00.
Award of $203,347.94 to Matta L. Brady, Admin, of the Estate of Shell C. Brady, deceased.
Award of $33,650.00 to Selected Risks Insurance Company, as subrogee of Shell C. Brady.